IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ESSEX INSURANCE COMPANY.

      Plaintiff,

v.                                           CIV. No. 15-289 GBW/SCY

MCCLELLAN-VICK CONSULTING, INC.,
and THE ESTATE OF JUDSON VALDEZ,

      Defendants.

## ORDER DENYING MOTION TO DISMISS OR STAY

This matter comes before the Court on a Motion to Dismiss or Stay by Defendant McClellan-Vick Consulting, Inc. (MCVI). *Doc. 7.* Having reviewed the motion, the attendant briefing (*docs. 11, 13*), and the relevant law, the Court will deny the motion and retain jurisdiction over this action.

### I.    BACKGROUND

MCVI employs oilfield consultants who are contracted out to supervise operations at oil wells. While working at a well site, Judson Valdez (Valdez), an MCVI employee and the supervisor at the site, directed an employee of another contractor, Pedro Mendoza (Mendoza) of Professional Well Services (PWS), to drive a modified vehicle from one well site to another. The vehicle crashed and Mendoza died as a

result.   At the time of the accident, Essex Insurance Company (Essex) provided Comprehensive General Liability coverage to MCVI and its employees.

On April 4, 2014, the Estate of Mendoza sued MCVI and Valdez in state court for negligence, wrongful death, and loss of consortium.  *Doc. 1* at 3.  Mendoza's estate also sued his employer (PWS), the well site owner, the manufacturer of the vehicle's cab, and the machine shop that modified the vehicle.

Nearly a year after the underlying state action began, Essex filed this suit on April 10, 2015, seeking a declaration that, under the insurance policy, it owes no obligations to MCVI or Valdez relating to the underlying state tort action.  *Doc. 1.*  On June 8, 2015, MCVI filed the instant Motion to Dismiss or Stay this federal action asserting that the Court should refuse to exercise jurisdiction over this case under the Declaratory Judgment Act.  *Doc. 7.*

## II.   LEGAL STANDARD

The Declaratory Judgment Act states, "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  Whether to exercise jurisdiction under the Act is within the trial court's discretion.  *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982 (10th Cir. 1994) ("[T]he Declaratory Judgment Act 'gave the federal courts competence to make a declaration of

rights; it did not impose a duty to do so.'") (citation omitted).  Nevertheless, the Tenth

Circuit has "expressly recognized" that providing an insurer with a forum for declaring

their liability is "one of the primary functions of the Federal Declaratory Judgment

Act."  *Horace Mann Ins. Co. v. Johnson By and Through Johnson*, 953 F.2d 575, 579 (10th Cir.

1991) (internal brackets omitted).

In determining whether to exercise discretion, the district courts are to consider

the following factors:

> [1] whether a declaratory action would settle the controversy; [2] whether
> it would serve a useful purpose in clarifying the legal relations at issue; [3]
> whether the declaratory remedy is being used merely for the purpose of
> 'procedural fencing' or 'to provide an arena for a race to *res judicata*'; [4]
> whether use of a declaratory action would increase friction between our
> federal and state courts and improperly encroach upon state jurisdiction;
> and [5] whether there is an alternative remedy which is better or more
> effective.

*Mhoon*, 31 F.3d at 983; *Mid-Continent Cas. Co. v. Village at Deer Creek Homeowners Ass'n,*

*Inc.*, 685 F.3d 977, 980-81 (10th Cir. 2012).

### III.   FACTUAL BACKGROUND[1]

#### A.  The Accident

On August 6, 2013, Valdez, an MCVI employee, was acting on behalf of MCVI in

supervising a well site owned by Energen Resources Corporation (Energen).  *Doc.* 7 at 3.

Mendoza, an employee of PWS, was also working at the well site.  *Id.*  After Valdez of

---

[1] The parties agree that the facts as laid out in Defendant's Motion to Dismiss are accurate.  *Doc. 11*
("MCVI correctly sets forth various allegations made by Essex in its Complaint for Declaratory Relief.").

MCVI instructed Mendoza of PWS to drive a modified vehicle from one well location to another, the vehicle crashed and Mendoza died as a result. *Id.* The vehicle driven by Mendoza had been modified to add a water tank, and, at the time of the accident, allegedly contained 17,000 pounds of water. Essex claims the vehicle was owned by PWS.

Essex had issued an insurance policy providing "primary liability insurance" to MCVI that was in effect at the time of the accident. *Doc.* 7 at 2. The policy covered MCVI and its employees, subject to certain terms and conditions. *Id.* Essex claims that the policy it provided to MCVI does not cover the August 6, 2013 accident.

### B.  The Contractual Provisions at Issue

#### 1.  *The Auto Exclusion Provision*

The insurance policy that MCVI provided to Essex contained an auto exclusion provision. This provision exempts from coverage bodily injury arising "out of any . . . 'auto' . . . [w]hether or not owned, maintained, used, rented, leased, or borrowed by any insured and whether or not hired, contracted, loaned or entrusted to others by any insured." *Id*. at 4. According to the policy, an auto is defined as "a land motor vehicle that is (1) designed for travel on public roads; or (2) subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; but not (3) 'mobile equipment.'" *Id.* The definition of mobile equipment, on the other hand, "includes vehicles designed for use principally off public

4

roads, unless they are subject to a compulsory or financial responsibility law or other

motor vehicle insurance law in the state where it [sic] is licensed or principally

garaged." *Id.*

> 2. *The Hired and Non Owned Automobile Liability Coverage Provisions*

The insurance policy that MCVI provided to Essex also contained a Hired Auto

Liability provision and a Non-Owned Auto Liability Provision.  The Hired Auto

Liability provision reads, "The insurance provided . . . applies to 'bodily injury' or

'property damage' arising out of the maintenance or use of a 'hired auto' by you or your

'employees.'" *Id.* at 5.  A hired auto is "any 'auto' you [MCVI] lease, hire, rent or

borrow," but does not include leased, hired, rented, or borrowed vehicles from MCVI

employees.  *Id.*

The "Non-Owned Auto Liability" provision reads, "The insurance provided . . .

applies to 'bodily injury' or 'property damage' arising out of the use of a 'non-owned

auto' by any person in the course of your business.'" *Id.*  A non-owned auto is "any

'auto' you do not own, lease, hire, rent or borrow which is used in connection with your

business." *Id.*  Unlike hired autos, non-owned autos include 'autos' owned by MCVI

employees.  *Id.*

### C. The Underlying State Case

The Estate of Mendoza brought negligence, *respondeat superior*, wrongful death, and loss of consortium claims against MCVI for Valdez's role in Mendoza's death. The Estate also sued the well owner (Energen), PWS,[2] the shop that made the modifications to the vehicle (Desert Machine Shop and Repair LLC), and the company that manufactured the cab of the vehicle (CMC of Georgia, Inc.). These parties are being sued for, among other things, their allegedly negligent actions that led to Mendoza's death.

### IV.   ANALYSIS

MCVI moves for the Court to decline to exercise discretionary jurisdiction over Essex's declaratory judgment action or, alternatively, to stay the proceedings until after the underlying state action is resolved. The parties agree that the Court should apply the factors set forth in *Mhoon*[3] but argue over which party they favor. Their respective weighing of the factors is predicated on their disagreement over the nature and degree of the overlap between this action and the state action. Essex focuses on the fact that the dispositive issues in the instant case are ones of contractual interpretation whereas the insurance contract is not at issue in the state liability case. It argues, therefore, that a declaratory judgment action is appropriate here. MCVI recognizes that the legal issues are different, but points out that the *factual* questions on which those legal issues turn

---

[2] The Estate is also suing Ramon Desotto of PWS under the dual persona doctrine.  *Doc. 7*, Ex. A at 19.
[3] 31 F.3d at 983.

overlap substantially.  It contends that these factual overlaps make this declaratory

judgment action inappropriate.

The significance of the overlap between the instant and state cases informs the

application of several of the *Mhoon* factors.  The Court will therefore examine the

manner in which the cases overlap and then apply the *Mhoon* factors in light of that

examination.

### A.  The Manner and Degree of Overlap between the Cases

1. *There is no overlap regarding the legal issues to be determined by the state and federal cases.*

At the outset, the Court notes that Essex is not a party to the state litigation and

the issues of Essex's liability and attendant duty to defend under the insurance policy

are not before the state court.  MCVI does not dispute this, but instead argues that the

state court is likely to resolve factual questions that will bear on those legal issues.  *See,*

*e.g., doc. 7* at 8 ("Although a declaratory judgment in this action may be an appropriate

means to determine whether Essex has a duty to defend and pay any sums in a

potential judgment against MCVI in the Underlying Litigation, the coverage issues are

dependent on a resolution of the same factual issues that are likely to be decided in the

Underlying Litigation.").  Therefore, MCVI warns,

> proceeding with this declaratory judgment action prior to resolution of
> factual issues in the Underlying Litigation may result in: this Court
> determining key factual issues that will likely be decided in the
> Underlying Litigation; inconsistent findings being made with regard to
> those key factual issues when the State district court has the ability to do

7

so itself; confusion, unnecessary complication, and burden to MCVI; and
factual determinations being made by this Court that may be binding
upon MCVI in the Underlying Litigation or a future proceeding.

*Id*. at 2.

In support of this point, MCVI cites to *St. Paul Fire and Marine Ins. Co. v. Runyon*

which declared that a federal court "should not entertain a declaratory judgment action

over which is has jurisdiction if the same fact-dependent issues are likely to be decided

in another pending proceeding."  53 F.3d 1167, 1171 (10th Cir. 1995).  The key to the

application of this rule rests in the meaning of the word "issues."  In *Runyon*, the

plaintiffs in the pending state action alleged that their lawsuit was a "covered claim"

pursuant to the insurance policy in question.  *Id*. at 1169.  Therefore, "[i]n resolving the

insurance contract, the state court [would] necessarily determine rights and obligations

under the contract."  *Id*.  Nonetheless, the insurance company was "seeking a

declaration by the federal court that the coworkers' lawsuit is not a covered claim."  *Id*.

While the coverage question was "fact-dependent," the court found dismissal of the

declaratory judgment action to be proper because of the complete overlap on the **issue** –

whether there was coverage.  *Id*. at 1170; *see also Western Casualty and Surety Co. v. Teel*,

391 F.2d 764, 766 (10th Cir. 1968) ("[A] federal court will generally not entertain

jurisdiction in a declaratory action if the identical issues are involved in another

pending proceeding.")

Here, the <u>issue</u> of coverage, and the interpretation of the contractual language which will decide it, is not an issue which will be decided by the state court. Therefore, at first blush, there is no overlap between the disputed issues in federal and state court. Nonetheless, the Court can foresee a case where the factual findings certain to come out of a state proceeding will necessarily determine the legal issues raised in the federal proceeding. As described below, the Court does not find the instant case to be such a circumstance.

> 2. *The overlap of factual disputes between the state and federal cases is limited.*

The contractual issues and the attendant factual questions in the case before this Court are as follows:

1. Whether the vehicle was an auto or mobile equipment as defined by the contract turns on:
   a. Whether the vehicle involved in the accident was a land motor vehicle that was subject to "compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged," *doc. 1* at 4; and
   b. If not subject to any such laws, whether the vehicle was designed for use on public roads or principally for use off of public roads.
2. Whether the vehicle was a hired auto or a non-owned auto as those terms are defined by the contract turns on:
   a. Whether the injury arose out of the maintenance or use of a hired auto by MCVI or its employees in the course of MCVI business. A hired auto is any auto MCVI leased, hired, rented, or borrowed; and
   b. Whether the injury arose out of the use of a non-owned auto by any person in the course of MCVI's business. A non-owned auto is any auto MCVI does not own, lease, hire, rent, or borrow that is used in connection with MCVI's business.

MCVI repeatedly asserts that "[c]ontinuing with this declaratory judgment action prior to resolution of factual issues in the Underlying Litigation may result in this Court determining key factual issues that will *likely* be decided in the Underlying Litigation." *E.g., doc. 7* at 14 (emphasis in original).  MCVI points to five overlapping "key factual issues" between this case and the state case:

1. What were MCVI's duties and responsibilities under its agreement with Energen;
2. Whether MCVI had the authority to supervise and/or direct Professional Well Services' employees;
3. Whether that authority was exercised prior to the incident and under what circumstances;
4. Whether MCVI owned, leased, rented, hired, or borrowed the vehicle that was involved in the incident forming the basis of the subject matter of the Underlying Litigation; and
5. What type of vehicle it was.

*Doc. 7* at 11-12.  MCVI argues that there will be an opportunity to resolve each of the overlapping issues in state court and that this Court's ruling on the contractual issues could impact the state case.  *Id.* at 12.

### a. Whether the vehicle was an "auto" or "mobile equipment" as defined by the contract.

As to the first set of fact questions as outlined by the Court, MCVI argues that determining the auto versus mobile equipment question would require the Court to "first determine whether the vehicle was designed for travel on public roads or whether the vehicle was designed for use principally off public roads." *Doc. 13* at 4.  This question, MCVI claims, would be resolved in the state case because "the manufacturer

10

and the intended use of the vehicle will likely be determined in the Underlying Litigation since the underlying plaintiffs have asserted claims of strict products liability as they relate to the manufacture of the vehicle and the operator cab. . . ." *Doc. 13* at 4.[4]

However, the overlap on this question is overstated.  First, even if the state court addressing the liability claims were to find that the vehicle was designed principally for use off of public roads, a court addressing the coverage dispute could still find coverage if it concluded that it was subject to "compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged." Conversely, if this Court resolves the coverage matter on the basis of compulsory or financial responsibility law, it would have no impact on the design aspects of the liability claim.

Of course, it is possible that, in resolving the coverage issue, this Court may have to decide have to resolve the coverage issue on the basis of design.   If so, some of the facts that would be considered would be some of the facts relevant to the state strict liability claim.  However, this overlap is far from complete.  Certainly, MCVI has not shown why the state court would make a finding on the narrow, tertiary issue of whether the vehicle was "designed for use principally off public roads."  In other words, although the state case will likely delve into the minutiae of the vehicle's design

---

[4] MCVI also asserts that ownership of the vehicle will have to be decided in both cases. *Doc. 7* at 8.  The Court agrees with Essex that this is not a difficult issue to resolve, i.e., one that could lead to conflicting results in this action and the state one.  As such, the Court finds this argument unpersuasive on the question of whether this Court should maintain jurisdiction.

and general purpose, it likely need not answer the extent to which the vehicle was

designed to be used on or off public roads.

For these reasons, the Court finds the factual overlap between the state and

federal case in this category to be limited.

> **b. Whether the vehicle is a hired auto or non-owned auto as defined by the contract.**

MCVI also argues that the facts relevant to the "hired auto" and "non-owned

auto" definitions overlap with facts bearing on MCVI's duties and responsibilities in the

state case.  It explains that

> [w]hile the definition of "hired auto" or "non-owned auto" may not be
> determined in the Underlying Litigation, facts that will provide the
> foundation for this Court in determining whether coverage exists under
> the Policy will likely be determined in the Underlying Litigation.
> Importantly, what MCVI's duties and responsibilities were when MCVI
> was performing consulting services for Energen and was allegedly
> supervising work and operations at the well site, and whether Mr.
> Mendoza's death occurred in a vehicle used in connection with MCVI's
> business.

*Doc. 13* at 6.  Essex counters that interpreting the hired auto and non-owned auto

provisions "will have no impact whatsoever (positive or negative) on MCVI's ability to

defend itself" in the state case "because, regardless of the answers to [the contractual

questions,] . . . MCVI must still contend with the allegations against it that an MCVI

employee should not have instructed the decedent to drive the vehicle from Point A to

Point B."  *Doc. 11* at 4.

As with the prior category, there is some overlap of relevant facts between the

different issues in the state and federal cases.  For example, under a theory of respondeat superior, the state court may be called upon to determine whether the MCVI employee, when he allegedly directed Mendoza to drive the vehicle, was acting "within the scope of his employment."  *See e.g., Lessard v. Coronado Paint & Decorating Center*, 168 P.3d 155, 160 (N.M. Ct. App. 2007).  The facts which inform that finding would also inform the question of whether the vehicle was "used in connection with [MCVI's] business.  However, it is unclear whether the state court would formally "determine" the underlying facts or simply consider them when answering the liability question.  Moreover, in the end, any factual findings would be applied to different, even if similar, legal standards or definitions.  Finally, as noted by Essex, the state case will focus on negligence whereas the federal case is focused on contractual coverage.

For these reasons, the Court finds the factual overlap between the state and federal case in this category to be only moderate.

### B.  The *Mhoon* Factors

#### 1.  *Whether a declaratory action would settle the controversy.*

The first factor calls for considering whether the declaratory action would settle "the controversy," though it is unclear if the question is whether the declaratory action would resolve the immediate controversy or whether the declaratory action would resolve the underlying state action.  The Tenth Circuit has explained that the disparity in application over "the controversy" to which the first factor is referring may be

explained by the differing factual scenarios in the varying cases. *Mid-Continent Cas. Co.*

*v. Village at Deer Creek Homeowners Assoc.*, 685 F.3d 977, 982 n. 3 (10th Cir. 2012) (citing

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 555 (6th Cir. 2008)).  In *Mid-Continent*, the

court further explained:

> In some cases, the likelihood a declaratory judgment will resolve the
> immediate dispute between the parties may tip the scales in favor of
> exercising jurisdiction.  In others, the existence of outstanding claims in a
> parallel state court action may counsel a different conclusion.  Especially
> relevant may be whether the state court action would necessarily resolve
> the issues in the declaratory judgment action.

*Id.*

Here, resolving the issues in this case would, quite obviously, settle the

controversy of whether Essex must defend or indemnify MCVI for the accident.

Moreover, the resolution of the state case does not appear likely to definitively resolve

all of the factual issues in this case, let alone the coverage issue.  Further still, resolving

the issues in this case will not definitively resolve the other significant issues in the state

case, such as whether MCVI, Valdez, or any other party to that litigation was negligent.

Accordingly, the Court finds that this factor weighs in favor of exercising jurisdiction.

*See St. Paul Fire and Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1169 (10th Cir. 1995)

(concluding that, where "the state court will determine, under state contract law,

whether [a separate] tort action is covered by the insurance contract, it is not necessary

for the federal court to issue a declaration"); *see also Hartford Fire Ins. Co. v. Gandy*

*Dancer*, No. CIV 100-0137 JB/RHS, 2011 WL 1336523, at *12 (D.N.M. March 30, 2011)

14

(concluding that, where "the issues before the [federal court] are distinct from the issues before the state court," jurisdiction may be appropriate).

      2.  *Whether the declaratory action would serve a useful purpose in clarifying the legal relations at issue.*

Essex asserts that the Court's exercise of jurisdiction and a decision on the coverage issue would "clarify the legal relationship between Essex and MCVI prior to final adjudication of the Underlying Litigation." *Doc. 11* at 10 (citing *Horace Mann*, 953 F.3d 578) ("Without a declaratory judgment action, the parties would have to wait until the tort victim attempted to collect his or her judgment from the insurance carrier to litigate the coverage issue"). MCVI does not appear to disagree, but again notes that overlapping factual issues exist. *Doc. 7* at 10 ("Although a declaration in this case may clarify the sole legal issues in this case, the coverage issues with respect to the Policy are largely dependent on numerous key factual issues in the Underlying Litigation."). Given the Tenth Circuit's recognition that providing an insurer with a forum for declaring its liability is "one of the primary functions of the Federal Declaratory Judgment Act" and that proceeding in this case would fulfill that purpose, the Court finds that this factor also weighs in favor of Essex. *Horace Mann*, 953 F.2d at 579 (internal brackets omitted).

> 3. *Whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to* res judicata.*"*

For this factor, MCVI acknowledges that it has "no direct evidence" establishing that Essex is using this case for an improper purpose. MCVI instead argues that (1) Essex's defense of MCVI in the state action under a reservation of rights, (2) its request that MCVI "be restrained and prohibited from filing or prosecuting any action in any other court" regarding the policy issue here, and (3) its seeking a declaration before the trial in the underlying action occurs, each "implies a race for *res judicata* . . . has already commenced." *Doc. 7* at 11; *doc. 13* at 13.

Essex responds that no such race exists since "this is the only action in which the legal issue of contract interpretation and coverage is raised." *Doc. 11* at 12. Thus, Essex asserts, this action "was not filed to gain a *procedural* advantage," but instead "was filed to obtain a *substantive* adjudication of the respective rights and obligations of Essex and MCVI prior to the trial of the Underlying Litigation . . . ." *Id.* at 4. Essex further asserts that its request to restrain MCVI from raising the issues before this Court in another forum does not affect the underlying litigation and is a standard request. *Doc. 11* at 13.

The Court finds the considerations raised by MCVI do not support an inference that Essex is proceeding with this lawsuit for an improper purpose. *See Runyon*, 53 F.3d at 1168 (holding that the district court did not abuse discretion in finding improper purpose where, after three years of negotiations, an insurance company filed declaratory action the day before it knew the insured would file suit in state court on

16

similar issues).  Additionally, the amount of overlap between the parties and the issues

dictates that there will be little, if any, preclusive effect.  For these reasons, this factor

also weighs in favor of Essex.

> 4.  *Whether use of a declaratory action would increase friction between our*
>    *federal and state courts and improperly encroach upon state jurisdiction.*

MCVI asserts that this is "the most significant factor here" and weighs in its

favor.  *Doc. 7* at 11. As noted above, MCVI asserts that "[c]ontinuing with this

declaratory judgment action prior to resolution of factual issues in the Underlying

Litigation may result in this Court determining key factual issues that will *likely* be

decided in the Underlying Litigation."  MCVI also argues that this Court has minimal

interest in resolving the contract issues since it is sitting in diversity, whereas the New

Mexico Supreme Court "has expressed a preference to have insurance coverage issues

resolved by the court hearing the underlying case.  *Id.* at 13 (citing *Lopez v. New Mexico*

*Public Schools Ins. Authority*, 870 P.2d 745 (N.M. 1994)).

However, the Court has already found that the factual overlap between the two

cases is not substantial.  To the extent that there is overlap, such overlap does not

preclude this Court from exercising jurisdiction.  *See Mhoon*, 31 F.3d at 984 (concluding

that a federal court's determination of whether a party acted intentionally, an issue

which was also before the state court, did not amount to "undue interference with the

state proceedings").  Most importantly, the insurance coverage issues will not be

resolved by the state court hearing the underlying case.  Moreover, as in *Mhoon*,

"[n]either party . . . has suggested that [the insurer . . . could have been made[] a party to the state tort action, thus obviating any need for an independent declaratory action and providing a simpler and more efficient resolution of [the insurer's] obligations." 31 F.3d at 984.

Under these circumstances, the Court finds that maintaining jurisdiction would not increase friction between our federal and state courts or improperly encroach upon state jurisdiction.  As such, this factor weighs in Essex's favor.

> 5.  *Whether there is an alternative remedy which is better or more effective.*

MCVI argues that the "more logical[] and efficient" approach would be to dismiss the case or stay it pending resolution of the state case.  *Doc. 7* at 14.  Essex asserts that having to wait until the underlying litigation is resolved could require it to wait "several months or years down the road, to re-initiate and/or resume the Declaratory Judgment Action . . . ."  *Doc. 11* at 5.  Essex aptly asks: "Why should [it] be required to wait, when the coverage issue can be resolved now?"  *Id.* at 5-6.  The Court agrees that it should not.  *Mhoon*, 531 F.3d at 984 ("We note . . . that there is a substantial interest in deciding [insurance coverage] issues without undue delay, particularly the question of the duty to defend").

## V.  CONCLUSION

Each of the *Mhoon* factors tip in favor of exercising jurisdiction over this case. Accordingly, the Court will **DENY** MCVI's Motion to Dismiss or Stay and exercise

18

jurisdiction over this case under the Declaratory Judgment Act.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent

19